## The Pennsylvania Railroad Co. *versus* Weber.

1. In an action against a railroad company for negligence in killing a man by their engine at the crossing of a public road, evidence that such road had been made by the company was irrelevant.

2. The cause of action did not include negligence in the construction of the public road.

3. It is not necessary to prove affirmatively that a person injured when crossing a railroad on a public highway had stopped and looked up and down the railroad; whether he used the proper precautions is to be determined by all the circumstances of the case : *per* GRAHAM, P. J.

May 14th 1872. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Perry county :* Of May Term 1872. No. 19.

Sarah Ann Weber, widow of George H. Weber, deceased, for herself and as next friend of the children of the deceased, brought an action on the case against the Pennsylvania Railroad Company for negligence in causing his death.

The deceased was a baker living at Duncannon, in Perry county, and carried bread, &c., in a one-horse wagon to Marysville, about six miles east of Duncannon, for sale. He travelled on the county road, which is alongside the railroad, and crosses it several times between the two towns. On the 28th of August 1869, he was crossing the railroad on the public road when his wagon was struck by the locomotive of the "Harrisburg Accommodation" train going east; his horse was killed immediately, and himself so badly hurt that he died in a very short time.

The crossing is about 110 feet from the end of a stone wall built on the south side of the railroad; the wall is 1117 feet in length extending westwardly. Until within 400 feet of the crossing of the county road it is below the grade of the railroad, it then ascends 128 feet from the railroad, then descends at a grade of six degrees, till within a short distance from the rails, and passes on a level over the railroad. The view of the railroad from the county road was obstructed by the embankment between the county road and the railroad, and by timber, brush, &c. The stone wall on the railroad, and the increased noise from the rolling of cars passing between the walls have the effect of drowning the sound of the whistle.

The evidence was conflicting as to whether the whistle was sounded in due time, or other sufficient warning given of the approach of the train to the crossing.

The engineer testified that the train was running from twenty to twenty-five miles an hour, and he whistled about 1200 feet from the crossing; when about 600 feet from the crossing he saw a horse's head coming toward the track; he blew "four or five short blasts in succession;" the wagon stopped on the track, the

man in it was pulling as if trying to back; the witness put on the brakes and reversed the engine, but the engine struck the wagon about the middle; it would take 300 or 400 yards to stop the train: it ran 200 or 300 yards beyond the crossing before it stopped: the speed was diminished before the wagon was struck.

There was no other evidence bearing on the conduct of the deceased before and at the time of the collision.

On the trial the plaintiffs offered to prove, that " the public road leading from the Cove station of Pennsylvania Railroad to Marysville, was built where it now is by the said railroad company."

This was objected to by the defendants, admitted and a bill of exceptions sealed, the court (Graham, P. J.) saying:—" We admit the offer for the present, reserving the question as to whether it is competent evidence, until we have the whole case before us, and to be disposed of in our instructions to the jury."

The defendants' 4th point was: " At the intersection of a railroad with a common road, there are concurrent rights and neither the traveller on the highway nor the company has an exclusive right of passage; but as the movement on railroads is necessarily rapid and the consequences of collision so disastrous, it is the duty of a traveller on a highway, when approaching the intersection, to look for approaching trains 'this way and that way,' and if he fails to do so, he is guilty of negligence and cannot recover for injuries sustained by a collision; and it was incumbent on the plaintiffs in this case to show affirmatively to the satisfaction of the jury, that Weber used all necessary care to avoid the injury, and failing to do so they cannot recover."

The court answered: " As to the duty of a traveller on the public highway, we answer this point in the affirmative. But we cannot say to you, that it is necessary that plaintiffs should prove affirmatively, that Weber used all these necessary precautions. He was travelling alone and he was killed; no one can tell what precautions he used to avoid the train; we, therefore, cannot say to you that there can be no recovery in the absence of affirmative evidence that he used these precautions. Whether he used them or not, you must determine under the circumstances of this case."

The verdict was for the plaintiffs for $2500. The defendants removed the record to the Supreme Court.

The errors assigned were the answer to defendants' fourth point, and the admission of the evidence in the bill of exceptions.

*L. W. Hall* (with whom were —— *McIntire* and *E. S. Doty*), for plaintiffs in error.

*C. A. Barnett,* for defendants in error.

The opinion of the court was delivered, July 3d 1872, by

[Pennsylvania Railroad Co. *v.* Weber.]

THOMPSON, C. J.—There is no error in this record, excepting in the admission of the testimony, that the company built the public road on which the plaintiff's husband was killed.  It is, and has been a public road it appears, for a long time past; it was built some twenty years or so ago, and the supervisors have had charge of it as such.  It appears from the testimony that this particular crossing is at a point which on account of the formation of the surface of the ground, and obstructions of standing timber, weeds and brush, is regarded as dangerous.  If the evidence had any effect at all, as it most likely had, it was to create liability because of the location and construction of the road by the company. This was an entirely different ground of complaint from that laid in the *narr.*  It was nothing more nor less, than superadding supposed negligence of twenty years standing to alleged. negligence in running their train where the accident occurred.  That was a very remote ground of liability, and conflicted with the *proximate cause* laid in the *narr.*  It cannot be disregarded on the ground of immateriality, for in the hands of able counsel much could be made out of it against the defendant.  It was not necessary as showing the duty of care on part of the company at such a place.  That was admitted by the regulations proved for whistling at the place; besides the surface of the earth would show that, independently of who constructed the road.  The testimony was irrelevant and injurious, for its admission would induce a jury to believe it material.  Counsel sometimes err by pressing too much into a case, as well as by offering too little.  Being clear that there was error here the judgment below must be reversed.

Judgment reversed, and *venire de novo* awarded.·